SUSAN M. CONNOR *et al.*, Plaintiffs-Appellants, v. MERRILL LYNCH REALTY, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—2153

Opinion filed September 30, 1991.

524

Susan Connor, of Chicago, for appellants.

Ruud & Larson, of Arlington Heights (Donald W. Larson and Laura M. Bombera, of counsel), for appellees Merrill Lynch Realty, Inc., Frank McCabe, and Cathy McCabe.

LeRoy W. Gudgeon, of Northfield, for appellee Marilyn Quinlan.

Jacobson, Brandvik & Anderson, of Chicago (Craig E. Anderson and Charles J. Corrigan, of counsel), for appellee Beckett Home Maintenance Corporation.

JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises from an action brought by Susan M. Connor and Tom Ticknor (plaintiffs), the buyers of a single-family home located at 3909 Emerson in Evanston (Home), against Merrill Lynch Realty, Inc., Frank McCabe and Cathy McCabe (Brokers), the real estate brokers, Marilyn Quinlan (Seller), the seller and Beckett Home Maintenance Corporation (Home Inspector), the home inspector to recover damages caused by persistent and massive flooding of the Home's basement. The trial court granted summary judgment in favor of all the defendants on all counts pursuant to section 2—1005 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005). Plaintiffs appeal that ruling.

In early 1985, plaintiffs enlisted the aid of Brokers in order to purchase a single-family home. During the course of Brokers showing homes to plaintiffs, plaintiffs indicated that they were only interested in homes with basements which were free from any flooding problem because they wanted to use the basement as a children's playroom. Eventually, Brokers showed plaintiffs the Home. Plaintiffs inquired whether the Home exhibited any signs of flooding. Brokers had assured plaintiffs that they could assist plaintiffs in determining whether a home had a problem with water or flooding in the basement. Plaintiffs claim that Brokers stated that there was no evidence of prior flooding or flood damage in the Home. However, Seller informed plaintiffs that in the laundry room of the basement a "small trickle" of water sometimes occurred during heavy rain due to a hairline crack in the concrete foundation. Seller went on to explain that in 1980, the Home did experience significant flooding as a result of the Metropolitan Sanitary District mistakenly installing the wrong size pipe during the Deep Tunnel project (Deep Tunnel flooding). Seller represented that the situation had been corrected and that the basement had never flooded again in the 20 years Seller lived in the Home.

Plaintiffs decided to purchase the Home. An inspection rider was part of the contract. This rider permitted plaintiffs to have the Home inspected within three days of the Seller's acceptance of the contract and to give written disapproval of the contract within those three days if plaintiffs did not approve the condition of the Home. Plaintiffs hired Beckett Home Maintenance Corporation, Home Inspector, to inspect the Home for possible defects. Donald Beckett, an employee of Home Inspector, inspected the Home in April 1985. Home Inspector offered plaintiffs two types of home inspections from which to choose. Plaintiffs could have chosen to have a written inspection, but instead opted for the less expensive inspection in which the Home Inspector walks the clients through the house and orally advises them of observed defects in the home. Home Inspector conducted an inspection of the Home in the presence of plaintiffs.

Home Inspector along with plaintiffs inspected the basement. Plaintiffs assert that they pointed out a stain on the baseboard to Home Inspector and that he stated the stain was caused by the window directly above it leaking and that caulking the window would completely remedy the problem. Plaintiffs further claim that Home Inspector stated that the hairline crack in the laundry room would not be a problem. According to plaintiffs, Home Inspector did not point

out any other water marks to them and that he said the basement showed no evidence of water problems or propensity to flood.

On the other hand, Home Inspector asserts that he checked the wall studs in the unfinished portion of the basement and found them to be free of any marks. Additionally, Home Inspector claims that he pointed out a flooded area along the wall of the laundry room. He stated, "This has had water marks. This has had water in the basement." Home Inspector did not attempt to explain the water marks away because he did not know what had caused them. Instead, the Seller again explained that a trickle of water came through the hairline crack during heavy rains.

Plaintiffs assert that in reliance on the statements made by all defendants, they purchased the Home. In August 1985, and thereafter, the Home repeatedly flooded with substantial quantities of sewage and water. After the initial flood, plaintiffs removed a large carpet which had been left behind on the basement floor by Seller. Plaintiffs then discovered a large number of floor tiles were damaged or missing from the floor and that the position of the carpet had obscured and prevented the discovery of the condition of the tiles. Furthermore, after Seller removed her furniture from the basement, plaintiffs discovered numerous dark marks and stains on the paneling throughout the basement. Plaintiffs also discovered that the surrounding neighborhood is subject to continual periodic flooding and that the Brokers had personal knowledge concerning the flooding propensities of the immediate area.

On March 16, 1987, plaintiffs filed a complaint against defendants alleging common law fraud by affirmative misrepresentation, common law fraud by misrepresentation made in culpable ignorance of the truth, negligent misrepresentation, violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 261 *et seq.*) and violation of the Real Estate License Act of 1983 (Real Estate Act) (Ill. Rev. Stat. 1985, ch. 111, par. 5801 *et seq.*) as to Brokers; negligent misrepresentation and breach of contract as to Home Inspector; and fraud by silence and omission and common law fraud by concealment as to Seller.

Each defendant filed a motion for summary judgment, and plaintiffs responded with a memorandum in opposition to each of the defendants' motions. Summary judgment was granted in favor of all the defendants on all counts of the complaint.

A defendant may at any time move with or without supporting affidavits for a summary judgment in his or her favor for all or any part of the relief sought. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005.)

Summary judgment will be granted only if the pleadings, affidavits and depositions on file reveal that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (*Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 452 N.E.2d 649.) Plaintiffs are not required to prove their case at summary judgment stage; however, they are under a duty to present a factual basis which would arguably entitle them to judgment in their favor. (*Martin v. 1727 Corp.* (1983), 120 Ill. App. 3d 733, 458 N.E.2d 990.) Facts which are unrelated to the essential elements of a plaintiff's cause of action are immaterial, and no matter how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. (*Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 456 N.E.2d 348.) In determining whether a moving party is entitled to summary judgment, the trial court must construe evidence strictly against the movant and liberally in favor of the opponent. *Dietz v. Spalla* (1989), 186 Ill. App. 3d 742, 542 N.E.2d 855.

■ Plaintiffs allege that they have a common law action for fraud by affirmative misrepresentation against Brokers. In order to prevail on the above action, plaintiffs must allege and prove the following elements: (1) a false statement of material fact; (2) that the statement was intentionally made; (3) that the party to whom the statement was made had a right to rely on it and did so; (4) that the statement was made for the purpose of inducing the other party to act; and (5) that the party reasonably relied on the statement to its detriment. *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.

Plaintiffs assert that Brokers assured them that they could assist plaintiffs in determining whether a home they were viewing had a problem with water or flooding in the basement. Plaintiffs allege in their complaint that they questioned Brokers regarding the Home's water damage and its propensity to flood. Plaintiffs claim that Brokers responded by representing that although there were water marks on the baseboard, there was no problem with flooding or damage caused by flooding and that there was no prior evidence of flooding. Plaintiffs further assert that Brokers lived in the area of the Home and knew the area was predisposed to flooding. Plaintiffs claim to have relied on these representations and purchased the Home, which has repeatedly flooded since they have resided there.

There is no evidence that Brokers had any knowledge that the basement of the Home had flooded more than the one-time Deep Tunnel flooding explained by Seller. Brokers identified the water marks in the basement to plaintiffs. After Seller's explanation of the Deep Tun-

nel flooding, Brokers stated that they could not see any damage other than that already apparent to plaintiffs. Furthermore, Brokers recommended to plaintiffs that they hire Home Inspector to inspect the basement, pursuant to the inspection rider, regarding the flooding. During the inspection of the basement, plaintiffs were told that there was water damage and, again, about the Deep Tunnel flooding.

Brokers did not fail to properly investigate the circumstances surrounding the flooding problem of the Home. Even though Brokers were told that plaintiffs wanted a home with a basement that did not flood and told plaintiffs that they could assist in determining whether a home had problems with flooding or water in the basement, plaintiffs were aware of a prior flooding and water marks and retained an inspector that further put them on notice that the basement of Home showed signs of previous flooding problems. Moreover, there is no evidence that Brokers had any material information which was concealed from plaintiffs.

█ █ Additionally, plaintiffs did not reasonably rely on any of Brokers' statements concerning the Home's flooding problems. In *Smith v. Ethell* (1986), 144 Ill. App. 3d 171, 494 N.E.2d 864, the following standard for investigating the status of real estate was set forth:

> "[W]hen an individual of ordinary prudence is on notice of a possible problem and that further investigation may be required:
>
> 'It is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his *own*.' " (Emphasis added.) (144 Ill. App. 3d at 175, quoting W. Prosser, Torts §108, at 718 (4th ed. 1971).)

The trial court properly found that plaintiffs were on notice of a potential defect. "A person may not enter into a transaction with his eyes closed to available information and then charge that he has been deceived by another." (*Central States Joint Board v. Continental Assurance Co.* (1983), 117 Ill. App. 3d 600, 606, 453 N.E.2d 932, 936.) In determining whether reliance was reasonable, all of the facts which plaintiff had actual knowledge of, as well as all of those it might have learned if it had used ordinary prudence, must be taken into account. (*National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 925, 381 N.E.2d 15, 19.) If ample opportu-

nity existed to discover the truth, then reliance is not justified. *Central States Joint Board*, 117 Ill. App. 3d at 607, 453 N.E.2d at 937.

■ Plaintiffs had actual knowledge of the Home having previously flooded with a significant amount of water. Plaintiffs argue that Brokers lived in the same area of the Home and knew the area's propensity to flood. Likewise, plaintiffs also lived in the area prior to purchasing the Home and must have learned by the "use of ordinary prudence" of the area's flooding problems. Nevertheless, the question is not whether the area had flooding problems, but whether the Home had flooding problems. There is no factual basis that Brokers made any false statements of material fact. Nothing in the record suggests that Brokers knew the Home had flooding problems, other than the representations made by Seller in the presence of plaintiffs. Additionally, plaintiffs' reliance on any of Brokers' statements regarding the Home's flooding problems was not reasonable in light of the actual knowledge plaintiffs had including the apparent water marks, the Seller's explanation of the Deep Tunnel flooding and Home Inspector's comments that the basement showed signs of previous flooding. Summary judgment in favor of Brokers as to count I of the complaint was properly granted.

Plaintiffs additionally allege fraudulent misrepresentation and negligent misrepresentation against Brokers. For the reasons stated above, summary judgment in favor of Brokers on these counts were also properly granted.

■ Plaintiffs claim that Brokers violated the Consumer Fraud Act. Section 2 of the Consumer Fraud Act protects consumers against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*) Under the Consumer Fraud Act, a deceptive practice is the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact. (Ill. Rev. Stat. 1983, ch. 121½, par. 262.) The Consumer Fraud Act is intended to provide broader consumer protection than the common law action of fraud. (*Kellerman v. Mar-Rue Realty & Builders, Inc.* (1985), 132 Ill. App. 3d 300, 306, 476 N.E.2d 1259, 1263.) A plaintiff, thus, does not have to show actual reliance or diligence in ascertaining the accuracy of the misstatements. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 182, 485 N.E.2d 855, 864; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 627-28, 413 N.E.2d 448, 452.) The Consumer Fraud Act applies to the communication of any false, misleading or deceptive information by real estate brokers to prospective purchasers if the broker

knows of the false, misleading or deceptive character of such information. (Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4); *Seligman v. First National Investments, Inc.* (1989), 184 Ill. App. 3d 1053, 1063, 540 N.E.2d 1057, 1063; *Beard*, 90 Ill. App. 3d at 627-28, 413 N.E.2d at 451.) The Consumer Fraud Act, therefore, was not intended to impose liability upon a broker for latent or hidden defects (*Harkala v. Wildwood Realty, Inc.* (1990), 200 Ill. App. 3d 447, 453), and should not be used to turn nondeceptive or nonfraudulent statements or omissions into actionable affirmations. *Kellerman*, 132 Ill. App. 3d at 306, 476 N.E.2d at 1263.

■ Plaintiffs allege that Brokers made misrepresentations by stating that there were water marks on the baseboard in the rear portion of the basement but that no problems with flooding or damage caused by flooding had occurred and that there was no evidence of prior flooding. As in *Munjal*, we refuse to find Brokers liable for latent or hidden defects of which they had no prior knowledge. (See *Munjal*, 138 Ill. App. 3d at 183, 485 N.E.2d at 864.) Plaintiffs were aware of the water damage as pointed out by both the Brokers and Home Inspector and explained by the Seller. Therefore, any alleged misrepresentations as to the water problem made by Brokers were cured when plaintiffs were informed of the water damage and the Deep Tunnel flooding. (See *Munjal*, 138 Ill. App. 3d at 183, 485 N.E.2d at 864.) Brokers did not make any representations as to the extent of the possible flooding problem in the Home. The extent of the flooding problem was either a latent or a hidden defect for which Brokers are not liable. (*Harkala*, 200 Ill. App. 3d at 453.) The record is clear that Brokers assisted plaintiffs in obtaining a home inspector to further inquire about the possible flooding problem. Moreover, there is no factual basis upon which plaintiffs can prove that Brokers knew of the falsity or misleading or deceptive nature of any representations they allegedly made to plaintiffs.

Brokers' actions were reasonable in light of the circumstances. There is no question of material fact concerning the allegations of a violation of the Consumer Fraud Act by Brokers; therefore, summary judgment on the consumer fraud count was proper.

Plaintiffs failed to properly plead any specific violations made by Brokers under the Real Estate Act. As stated above, plaintiffs were informed of the water damage and previous flooding of the Home. Plaintiffs did not reasonably rely on any misrepresentations made by the Brokers. As a matter of law, Brokers are entitled to summary judgment on count V because no question of material fact exists as to a violation of the Real Estate Act.

▉ Plaintiffs assert a cause of action for negligent misrepresentation against Home Inspector by alleging that he had a duty to reasonably inspect the Home and that he breached that duty. An action for negligent misrepresentation is maintainable if plaintiffs allege a duty owed by Home Inspector to them, a breach of that duty and injury proximately caused by the breach. See *McAfee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50; *Lindquist v. Highland Park Hospital Foundation* (1976), 40 Ill. App. 3d 722, 353 N.E.2d 156.

▉ This case is analogous to *Chicago Export Packing Co. v. Teledyne Industries, Inc.* (1990), 207 Ill. App. 3d 659, 566 N.E.2d 326, in which the court affirmed the grant of summary judgment in favor of defendants by finding that plaintiff had actual notice that rail service would not be available, and that, consequently, plaintiff could not rely on defendants' representations that it would be available. (*Chicago Export Packing*, 207 Ill. App. 3d at 665, 566 N.E.2d at 330.) Similarly, plaintiffs had actual notice that the Home had once taken a significant amount of water in the basement. Plaintiffs, therefore, cannot rely on Home Inspector's representations when they had actual notice that the Home flooded previously. Moreover, Home Inspector did not attempt to explain the basement's evidence of flooding, but instead, allowed the Seller to explain the water marks. Summary judgment, thus, was properly granted to Home Inspector as to count VI of the complaint.

Plaintiffs allege that Home Inspector breached the contract by failing to inform them of the Home's propensity for severe flooding. Plaintiffs admit that Home Inspector did point out that the basement did have water marks. Home Inspector had no way of knowing if the water marks were from the Deep Tunnel flooding previously explained to plaintiffs or from persistent flooding. Home Inspector was hired to inspect the Home for defects. Home Inspector did this; he pointed out that the Home had taken in water on at least one previous occasion. Plaintiffs were on notice of the potential defect, namely, that the basement had flooded and there was physical evidence to substantiate it. There is no allegation that the condition of the Home shows evidence that there is a "propensity" for the basement to flood or numerous previous floodings. Home Inspector did not attempt to explain the reasons for the obvious water damage. Instead, Seller, who presumably had knowledge of the incident(s) of flooding, explained the water marks. Plaintiffs chose to believe Seller. Home Inspector fulfilled its obligations under the contract and no ma-

terial issue of fact exists as to whether Home Inspector breached the contract; therefore, summary judgment was proper.

Plaintiffs allege fraud by silence and omission against Seller in their complaint. Plaintiffs contend that Seller represented that the Home did not flood during the more than 20 years in which she lived there, with the exception of the Deep Tunnel flooding. However, plaintiffs assert that since they have resided in the Home, it had repeatedly and substantially flooded with sewage and water. While silence in a business transaction does not necessarily amount to fraud, silence accompanied by deceptive conduct or suppression of material facts results in active concealment. (*Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 841, 277 N.E.2d 769, 771.) "[I]f a party to a contract of sale does not disclose the *whole* truth, having the requisite intent to deceive, this amounts to fraud equally with an affirmative falsehood." (Emphasis added.) (*Munjal*, 138 Ill. App. 3d at 180, 485 N.E.2d at 862, citing *Russow*, 2 Ill. App. 3d at 841, 277 N.E.2d at 771.) Plaintiffs claim that Seller failed to disclose the whole truth, mainly, that the Home flooded repeatedly and not just on the one occasion of the Deep Tunnel flooding.

The right of a moving party to summary judgment must be clear, free from doubt and determinable solely as a question of law. If there is any fact or facts present on which reasonable people may disagree or *inferences which may be fairly drawn from those facts* and may lead to different conclusions, then resolutions of those facts and inferences must be made at trial. (*Nolan v. Johns-Mansville Asbestos & Magnesia Materials Co.* (1979), 74 Ill. App. 3d 778, 392 N.E.2d 1352.) A fact can be established from circumstantial evidence where the circumstances or events are so related to each other, as to make the conclusion the only probable one which can be drawn. (See *Johnson v. Burlington Northern, Inc.* (1982), 107 Ill. App. 3d 130, 437 N.E.2d 334.) On the basis of the allegation that since Buyer moved into the Home there has been persistent and significant flooding, the only probable conclusion which can be drawn is that the persistent flooding of the Home did not begin after 20 flood-free years with the exception of the admitted Deep Tunnel flooding. It can be inferred that Seller had knowledge that the Home was predisposed to flooding and that the evidence of a flooding problem was an accumulation of damage from several previous floodings. A seller's failure to disclose the full extent of the problem may be an attempt to deceive plaintiffs in order to induce them into purchasing the property. (See *Munjal*, 138 Ill. App. 3d at 180, 485 N.E.2d at 862.) A reasonable possibility that the theory consistent with plaintiff's pleading is true

precludes summary judgment because only where there is no doubt as to facts and the law applicable thereto should a motion for summary judgment be granted. (*Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.) A genuine issue of material fact exists as to whether Seller knowingly made a false statement regarding the history of the flooding of the basement to plaintiffs. We find that plaintiffs have presented a factual basis which would arguably entitle them to judgment in their favor. (See *Martin*, 120 Ill. App. 3d 733, 458 N.E.2d 990.) We reverse the trial court's grant of summary judgment in favor of Seller as to count VIII and remand this matter for continued proceedings.

Plaintiffs allege that Seller actively concealed evidence of flooding in order to induce them to purchase the Home. There is no evidence that Seller replaced damaged tile or paneling or even attempted to paint over water marks evident in the basement. Plaintiffs argue that Seller concealed the water damage by placing carpeting and furniture over the water-damaged areas. There is no evidence, however, that Seller prevented plaintiffs from moving the furniture in order to inspect the area it covered. More importantly, Seller admitted to having a significant amount of water in the basement at one time. Thus, after Seller's admission there would be no reason to conceal the damage which may have been done. No issue of material fact exists with regard to count IX of the complaint, and the trial court properly granted summary judgment in favor of Seller.

For the reasons stated herein, we affirm the circuit court of Cook County's grant of summary judgment in favor of defendants as to counts I through VII and count IX, but reverse the summary judgment granted in favor of Seller as to count VIII and remand it for further proceedings.

Affirmed in part; reversed in part and remanded.

CAMPBELL and O'CONNOR, JJ., concur.