NAT LEHRMAN, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. SOUTH CHICAGO CABLE, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—89—2065

Opinion filed February 22, 1991.

Lowell E. Sachnoff, Charles R. Watkins, Joel N. Shapiro, and Gary S. Caplan, all of Sachnoff & Weaver, Ltd., of Chicago, for appellant.

James E. Betke and Paul J. Kozacky, both of McDermott, Will & Emery, of Chicago, for appellees.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from the entry of summary judgment under section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005) in defendants' favor on plaintiff's complaint alleging statutory fraud and breach of contract. We consider whether a genuine issue of material fact existed on those counts when defendants stated that additional outlets for cable television were free but they subsequently charged for converters. We affirm.

Plaintiff filed a six-count class-action complaint alleging he was a subscriber to cable television provided by defendants. He received a letter dated May 24, 1988, from defendants which stated in relevant part:

> "Also effective July 1, we will no longer charge for additional outlets. That's right! For a one-time installation charge, you can now have *up to two additional outlets in your home for FREE!!*" (Emphasis in original.)

In response to the letter, plaintiff had two additional outlets installed in his home and paid an installation charge of $25. In January of 1989, defendants assessed an additional monthly charge of $4 for each of his two additional outlets. Plaintiff alleged that the letter misrepresented or omitted a material fact because defendants knew they would subsequently charge for additional outlets but did not inform subscribers.

Plaintiff sought money damages and injunctive relief under the *Consumer Fraud and Deceptive Business Practices Act* (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*) (Consumer Fraud Act), the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1989, ch. 121½, par. 311 *et seq.*) (Deceptive Trade Act), and the Chicago Cable Communications Ordinance (Chicago Municipal Code §113.1—1 *et seq.* (1984), now §4—48—010 *et seq.* (1990)) (Cable Ordinance). Plaintiff also sought recovery for common law fraud, breach of contract, and promissory estoppel.

Defendants answered the complaint and admitted that plaintiff was charged $8 per month but stated the charge was for converters on additional outlets rather than for additional outlets.

Defendants moved for summary judgment relying on the affidavit of Robin A. Lawson, their director of governmental relations. Attached to her affidavit was defendants' service agreement which provided that subscribers may be required to pay equipment lease fees and allowed the subscriber to cancel the agreement on reasonable notice to defendants.

Lawson stated in her affidavit that prior to July of 1988, defendants charged subscribers $6.95 per month for cable service to additional outlets. If a subscriber wanted an additional outlet on a television that was not "cable ready," a converter was required and provided without charge. In her deposition, she added that converters were also required to receive a "scrambled" signal. After July of 1988, defendants did not charge for service to additional outlets or for converters on those outlets. By letter dated November 28, 1988, defendants notified all subscribers that a monthly equipment fee of $4 would be charged for each converter on additional outlets effective January 1, 1989. The letter was attached as an exhibit to Lawson's affidavit. Lawson also stated that subscribers were not required to rent converters from defendants but could obtain them from other sources. After the converter charge went into effect, defendants continued to provide service to additional outlets without charge.

Lawson stated plaintiff was a cable subscriber since 1987. From July of 1988 through December of 1988, he received cable service on two additional outlets with converters without charge. When the converter charge was imposed in January of 1989, plaintiff paid the charge and continued to receive service to the additional outlets although he could have cancelled the service to additional outlets.

In response to defendants' motion for summary judgment, plaintiff filed a cross-motion for summary judgment relying on excerpts from certain depositions and other exhibits.

One of the depositions plaintiff relied on was of Michael Anthony Green, defendants' general manager. He testified that in April of 1988, Lawrence Carlton, chairman of defendants' board of directors, told him to eliminate the monthly charge for additional outlets. Green had understood that additional outlets referred to service and equipment and that defendants would continue to provide converters on additional outlets without charge. In response to Carlton's directive, defendants sent the May 24, 1988, letter offering free additional outlets.

Subsequently, in September of 1988, Carlton told Green that he noticed they were not charging for converters on additional outlets. Carlton stated that there was a misunderstanding in their previous conversation and that defendants should charge for converters on additional outlets. As a result, defendants sent the November 28, 1988, letter notifying subscribers that a converter charge on additional outlets would take effect January 1, 1989.

Green also testified that in his opinion the letter, dated May 24, 1988, stating that additional outlets were free was confusing. However, he later testified that he held that opinion in light of the present lawsuit and at the time he sent the letter he thought it was clear.

Plaintiff testified in his deposition that when he received defendants' letter stating that additional outlets would be free, he had two additional outlets installed. The person who installed the additional outlets told plaintiff he needed converters on those outlets to receive a certain channel he ordered. He did not see defendants' subsequent letter dated November 28, 1988, notifying subscribers that a $4 converter charge would be effective January 1, 1989. When he saw the charge on his bill, he had a telephone conversation with Betty from defendants' office and asked what would happen if he did not pay the $8 converter charge. He was told defendants would "zap" him, which meant they would discontinue his cable service. Plaintiff did not cancel the service to his additional outlets and continued to pay the $8 monthly charge for two converters.

Plaintiff explained he was misled or deceived by defendants' letter because he knew that the previous $6.95 charge for an additional outlet included a converter. Because defendants never charged for converters before, he felt deceived. Defendants told plaintiff converters were an option and, as he testified, "you didn't have to have the converters." But because plaintiff needed the converters to receive a channel he wanted, they were not an option to him.

Also in support of his cross-motion for summary judgment, plaintiff relied on a bill from defendants, for service beginning in January of 1989, which identified the $8 monthly charge as "add'l outlet." Additionally, plaintiff attached documentation of numerous subscriber complaints concerning the converter charge made to defendants, the Illinois Attorney General's office, and the Chicago Cable Commission.

In a memorandum filed after their reply brief, plaintiff relied on a notice of violation from the Chicago Cable Commission indicating there was "reason to believe" defendants violated the Consumer Fraud Act, the Deceptive Trade Act, and the Cable Ordinance. The notice stated defendants had 30 days to respond to the charge. No

further action is evident from the record. Defendants moved to strike the exhibits attached to this memorandum but did not obtain a ruling on the motion.

The trial judge found that the letter was not misleading and that as a contract it was not ambiguous. Defendants' motion for summary judgment was granted, and plaintiff's cross-motion was denied. Plaintiff now appeals.

OPINION

■ Summary judgment should be granted if the pleadings, depositions, and affidavits reveal there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) Summary judgment is improper when there is a dispute as to material facts or when the material facts are undisputed but reasonable persons may draw different inferences from those facts. *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.

■ On appeal, plaintiff only challenges the entry of summary judgment on his statutory fraud and contract claims. Plaintiff's statutory claims alleged defendants violated section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1989, ch. 121½, par. 262), sections 2(11) and (12) of the Deceptive Trade Act (Ill. Rev. Stat. 1989, ch. 121½, pars. 312(11), (12)), and section 48(A) of the Cable Ordinance (Chicago Municipal Code §113.1—48(A) (1984)). Section 2 of the Consumer Fraud Act prohibits

> "any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce." (Ill. Rev. Stat. 1989, ch. 121½, par. 262.)

Sections 2(11) and (12) of the Deceptive Trade Act define, in part, a deceptive trade practice as:

> "(11) *** false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;
>
> (12) *** any other conduct which similarly creates a likelihood of confusion or of misunderstanding." (Ill. Rev. Stat. 1989, ch. 121½, pars. 312(11), (12).)

A violation of either the Consumer Fraud Act or the Deceptive Trade Act is a violation of section 48(A) of the Cable Ordinance, which requires that the grantees of cable franchises comply with Federal and State law. Chicago Municipal Code §113.1—48(A) (1984).

Essentially, the facts are not disputed. Defendants' letter stated they would no longer charge for additional outlets beginning July 1, 1988. In response, plaintiff had two additional outlets installed which required converters to receive a certain channel he ordered. At that time, converters were provided without charge. On January 1, 1989, defendants imposed a new charge on converters on additional outlets. Under the service agreement, defendants were entitled to impose an equipment lease fee on converters. When plaintiff became aware of the charge, he paid it and continued to receive service on additional outlets. Since July 1, 1988, defendants have not charged for additional outlets.

Plaintiff contends that defendants' letter was misleading because the term "additional outlets" included converters and that converters were an "essential component" of additional outlets. Therefore, when defendants stated that additional outlets were free, he and other subscribers understood that converters were included. However, this claim is not supported by the facts. He did not testify that he had understood the term "additional outlets" used in the letter included converters. Also, he was aware that converters were not required on all additional outlets.

■ Additionally, under the Consumer Fraud Act, the misrepresented or omitted fact must have been material. (Ill. Rev. Stat. 1989, ch. 121½, par. 262.) In *Kellerman v. Mar-Rue Realty & Builders, Inc.* (1985), 132 Ill. App. 3d 300, 307, 476 N.E.2d 1259, 1264, summary judgment was affirmed on plaintiffs' claims under the Consumer Fraud Act and the Deceptive Trade Act because the "requisite materiality" was not present. Plaintiffs alleged that defendant did not disclose a material fact in an advertisement. The court found that because plaintiffs did not allege or present facts to show they would have acted differently had they known of the fact, there was no evidence that defendant concealed a material fact. Similarly here, there are no facts to support the materiality requirement. When plaintiff was aware of the converter charge on the additional outlets, he continued to receive the cable service to additional outlets because he wanted to receive a certain channel which required a converter.

■ Plaintiff also argues that the trial judge erred when he did not consider extrinsic evidence, such as subscriber complaints, to determine whether defendants' letter was misleading or deceptive. Because the Consumer Fraud Act provides that decisions of the Federal Trade Commission should be considered in interpreting the Act (Ill. Rev. Stat. 1989, ch. 121½, par. 262), plaintiff relies on *In re Bristol-Myers Co.* (1983), 102 F.T.C. 21, *aff'd* (2d Cir. 1984), 738 F.2d 554.

That case explained the Commission should consider extrinsic evidence of consumer perception to determine the meaning of an advertisement but such evidence is not necessarily determinative. As a result, this issue is not dispositive and does not change our decision here.

■ There was no question of material fact presented to create an issue that defendants misrepresented or omitted a material fact in their letter. The letter did not state that converters were free, and defendants did not charge for additional outlets. Accordingly, summary judgment was properly granted in defendants' favor on the counts of plaintiff's complaint alleging statutory fraud.

Plaintiff also argues on appeal that summary judgment was improperly granted on his breach of contract claim.

■ Plaintiff contends that defendants' letter stating they would no longer charge for additional outlets was an offer, which he accepted, of additional outlets without charge. Defendants breached the contract when they imposed a charge for converters on additional outlets. Plaintiff contends the term "outlet" is ambiguous. Whether a contract is ambiguous is a question of law which can be determined on a motion for summary judgment. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 523 N.E.2d 30.) We agree with the trial judge that the language used in the letter, assuming a contract was formed, was not ambiguous and summary judgment was properly granted.

For the foregoing reasons, summary judgment in defendants' favor is affirmed.

Affirmed.

MURRAY and McNAMARA, JJ., concur.