NOTICE
Decision filed 12/02/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240587-U

NO. 5-24-0587

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ANNE SCHLAFLY CORI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 16-MR-111 |
| | ) | |
| JOHN F. SCHLAFLY, | ) | Honorable David W. Dugan and |
| | ) | Honorable Sarah D. Smith, |
| Defendant-Appellant. | ) | Judges, presiding. |

_____

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Boie and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's order finding John Schlafly in statutory contempt for filing an affidavit in bad faith and for purposes of delay was not against the manifest weight of the evidence or an abuse of discretion. The circuit court did not abuse its discretion in ordering John Schlafly to pay the sum of $28,500 to Anne Schlafly Cori for the reasonable attorney fees she incurred in countering the false affidavit. The judgment of the circuit court is affirmed.

¶ 2    Defendant, John F. Schlafly (John), appeals from the circuit court's orders finding him in statutory civil contempt for filing an affidavit in bad faith and for purposes of delay and directing him to pay the plaintiff, Anne Schlafly Cori (Cori), a sum for the reasonable attorney fees she incurred in countering the false affidavit. For the reasons that follow, we affirm.

1

¶ 3                                 I. BACKGROUND

¶ 4     This case arose out of a dispute over the ownership and control of the assets of Eagle Forum. Eagle Forum is a not-for-profit, tax-exempt organization under § 501(c)(4) of the Internal Revenue Code (26 U.S.C. § 501(c)(4) (2016)). The litigation has been contentious and the record on appeal is lengthy. John filed a prior appeal from orders of the circuit court finding him in indirect civil contempt and statutory contempt. After reviewing the record, we determined that the circuit court's order finding John in statutory contempt for filing a false affidavit was not immediately appealable under Illinois Supreme Court Rule 304(b)(5) because the circuit court had not assessed a penalty. We dismissed that portion of the appeal for lack of jurisdiction. See *Cori v. Schlafly*, 2021 IL App (5th) 200342-U, ¶ 48. Following a hearing, the circuit court ordered John to pay $28,500 to Cori for the attorney fees she incurred in countering the false affidavit and prosecuting her motion for statutory contempt. This appeal followed. The factual background and the procedural history of this case were detailed in our prior order. For context, an overview of the pertinent background facts and procedural history follows.

¶ 5     This litigation began in April 2016. At that time, Cori and the other plaintiffs, Eunie Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry, were members of the Board of Directors of Eagle Forum. The plaintiffs were sometimes referred to as the "Majority Directors." Andy Schlafly, Kathleen Sullivan, and LaNeil Wright Spivy were also members of the Board of Directors of Eagle Forum. John was a member of the Board of Directors of Eagle Forum, and he was treasurer of the organization. Edward R. Martin (Martin) held the office of President of Eagle Forum. Martin also held the office of President of the Eagle Forum Education and Legal Defense Fund (EFELDF), a not-for-profit, tax-exempt entity under § 501(c)(3) of the United States Code

2

(26 U.S.C. § 501(c)(3) (2016)). Phyllis Schlafly, a nonparty, served as a Director, Chairman, and Chief Executive Officer of Eagle Forum until her death on September 5, 2016.

¶ 6    According to the general allegations in the plaintiff's complaint, Martin had been elected to the office of President of Eagle Forum on January 31, 2015. During Martin's tenure as president, discord developed among Eagle Forum's national organization, its state affiliates, and its membership base, and a rift arose within the leadership of Eagle Forum. On March 29, 2016, Cathie Adams, Shirley Curry, and Eunie Smith mailed a notice to all members of the Board of Directors of Eagle Forum, advising them that a board meeting would be held by teleconference on April 11, 2016.

¶ 7    In response, Martin emailed a notice to the EFELDF Board of Directors on April 7, 2016, purporting to call a special meeting of the board members. Martin emailed this notice of the special board meeting about 20 hours before the meeting was scheduled to take place. In the email, Martin indicated that he had been informed of a "conspiracy to hijack Eagle Forum in a manner disloyal to our founder," and that Phyllis Schlafly had reached out to Eagle Forum members who appeared to be active in the conspiracy, but those members failed to respond. Martin continued:

> "In light of these pressing matters and pursuant to the By-Laws, Art. III, Section 5, I hereby call a special meeting of the board of directors for the Eagle Forum Education and Legal Defense Fund for tomorrow morning, April 8, 2016 at 10 am CST by telephone. We will consider emergency actions to take immediate steps to protect the Fund and Phyllis."

¶ 8    Pursuant to Martin's notice, members of EFELDF's Board of Directors attended the meeting by telephone on April 8, 2016. Cori, a director of EFELDF, also joined the call. Cori made continuing objections to the meeting and to the conducting of any business on the grounds that the EFELDF Bylaws required that notice of a special meeting be sent seven days before the meeting

3

and be delivered personally or through the mail or fax. Cori asserted that the meeting had been called without proper notice. Eventually, Cori was muted so that she could not continue to raise objections. During the teleconference, members of the EFELDF Board of Directors purportedly removed Cori as a director and an officer by electing her successor.

¶ 9 On April 9, 2016, Martin emailed more than 41,000 individuals, using a "contacts list" that Eagle Forum often used for mass mailings. In the email, Martin claimed that six directors of Eagle Forum were going to hold a "rogue meeting." He implored the email recipients to urge those directors not to "hijack" Eagle Forum for their own purposes. That same day, the plaintiffs received a letter, ostensibly from Phyllis Schlafly, asking them to resign their positions immediately. On April 10, 2016, the plaintiffs received a letter from the Runnymede Law Group. Runnymede stated that it had been retained as legal counsel for Eagle Forum, and it directed the plaintiffs to stop acting in violation of their fiduciary duties to Eagle Forum.

¶ 10 On April 11, 2016, the Board of Directors of Eagle Forum met via teleconference. The six Majority Directors were on the call. Three other directors, Andy Schlafly, Kathleen Sullivan, and LaNeil Wright Spivy, were absent. Phyllis Schlafly, John, and Martin also joined the call. Under the Eagle Forum Bylaws, the presence of 6 of the 11 directors constituted a quorum. Thus, the six Majority Directors, plus Phyllis Schlafly and John, constituted a quorum. When the meeting moved into executive session, Martin was not allowed to participate because he was not a director. During the executive session, a majority of the board members approved a motion to immediately terminate Martin as President of Eagle Forum. A majority of the board members also approved motions to terminate the Runnymede Law Group as legal counsel for Eagle Forum, to revoke all signatories on Eagle Forum financial accounts, and to conduct an audit of Eagle Forum assets. All motions passed by a margin of 6-2, with the plaintiffs voting in favor of each motion, and John

4

and Phyllis Schlafly objecting to and opposing each motion. Immediately after the meeting ended, Runnymede Law Group was notified that it no longer represented Eagle Forum. Martin and the Eagle Forum staff were notified that Martin had been terminated from his role as President of Eagle Forum.

¶ 11     On April 22, 2016, the plaintiffs filed this action against John, Martin, and Eagle Forum.[1] The plaintiffs alleged that John and Martin refused to acknowledge Martin's termination as President of Eagle Forum, and that John and Martin prevented the plaintiffs from gaining access to Eagle Forum documents, financial accounts, contact lists, websites, and related passwords. The plaintiffs further alleged that Martin used Eagle Forum social media accounts to disseminate disinformation about the April 11, 2016, meeting of the Eagle Forum Board of Directors. The plaintiffs claimed that the defendants' actions harmed the name and reputation of Eagle Forum.

¶ 12     The original complaint contained counts alleging that John and Martin breached their fiduciary duties to Eagle Forum, its members, donors, and officers (counts I and II), and colluded to prevent the Majority Directors from fulfilling their fiduciary duties to Eagle Forum (count III). The complaint included a count for accounting of Eagle Forum's property (count IV) and a count for a judgment declaring that the April 11, 2016, meeting of the Eagle Forum Board of Directors was properly noticed and that all motions approved during the meeting were valid and lawful (count V). The plaintiffs also sought to enjoin John and Martin from interfering with the plaintiffs' efforts to perform their obligations to Eagle Forum (count VI).

¶ 13     John and Martin filed an answer and denied the main allegations of the plaintiffs' complaint. They also filed affirmative defenses, asserting that the April 11, 2016, meeting of the

---

[1]Eagle Forum was sued as a nominal defendant. Eagle Forum was later realigned as a party plaintiff and was given leave to file its own complaint in this action. In addition, EFELDF, Eagle Trust Fund, Phyllis Schlafly's American Eagles, the Estate of Phyllis Schlafly, Andrew Schlafly, Bruce Schlafly, and Kathleen Sullivan were added as party defendants.

Eagle Forum Board of Directors violated the organization's bylaws and that any actions taken by the Majority Directors were *ultra vires* and in breach of their fiduciary duties. In addition, Martin and John filed a counterclaim seeking declaratory and injunctive relief.

¶ 14    In April 2016, the plaintiffs filed a motion for a temporary restraining order against John and Martin. Following a hearing on April 29, 2016, the circuit court issued a temporary restraining order (TRO) to restrain John and Martin from blocking the plaintiffs' access to "the Illinois Headquarters and any and all property of Eagle Forum 501(c)(4) located thereon or elsewhere." The court also placed signatory authority on Eagle Forum accounts with Cori, Smith, and Phyllis Schlafly, and required all three to sign any instrument of deposit or withdrawal. In October 2016, the circuit court issued an amended temporary restraining order (Amended TRO) against John and Martin pursuant to an emergency motion by the plaintiffs. The court concluded that allowing John and Martin "to continue to use, access, control, transfer and or modify Eagle Forum property and resources" was detrimental to the status quo and contrary to the court's desire to protect and preserve the assets of Eagle Forum pending a resolution of the case on the merits. Thereafter the plaintiffs and Eagle Forum filed motions for contempt against John and Martin for violations of the Amended TRO. All pending motions for contempt were called for hearing on June 19, 2018, and June 20, 2018. After two days of testimony, the parties agreed to an order regarding some of the disputed property and the contempt proceedings were continued indefinitely.

¶ 15    On November 22, 2019, the plaintiffs filed a fifth amended complaint containing 22 counts against various defendants. Count XX is pertinent to the issues in this appeal. In count XX, Cori sought a judgment for declaratory relief against John, Martin, Bruce Schlafly, and EFELDF. According to the allegations in count XX, Martin sent an email on April 7, 2016, scheduling a special meeting of the EFELDF Board of Directors for the following morning. On April 8, 2016,

the EFELDF Board of Directors convened a meeting via teleconference. Cori, then an EFELDF Director, was on the call and objected because the meeting was convened without seven days' notice as required by the EFELDF Bylaws. Cori's objection was noted, but the board members proceeded to conduct business, including voting for Cori's replacement on the EFELDF Board of Directors. Cori alleged that the meeting was improper under the EFELDF Bylaws because it was not called with the required notice. Cori further alleged that during the conference call, Martin selectively muted Cori and other participants to silence them and to create an impression of consent among the directors. Cori claimed that there was a real and existing controversy regarding the actions taken by the EFELDF Board of Directors at the teleconference on April 8, 2016, including the removal of Cori as a director of EFELDF, and actions taken after the teleconference wherein Martin, John, and Bruce Schlafly refused to grant Cori's demand for access to the books and records of EFELDF. Cori sought a judgment declaring that the purported meeting of the EFELDF Board of Directors on April 8, 2016, was improperly called, unlawfully conducted, and *ultra vires*, and that the actions taken at the purported meeting on April 8, 2016, were unlawful, invalid, and passed in direct contravention of the EFELDF Bylaws, the EFELDF Articles of Incorporation, and Illinois law.

¶ 16    In response, John acknowledged that the EFELDF board meeting on April 8, 2016, was improper under the EFELDF Bylaws, but asserted that a subsequent meeting of the board of directors was conducted with proper notice and with the same result. John denied that there was an actual controversy between the parties regarding the meeting on April 8, 2016, and he denied that Cori was entitled to any of the declaratory relief she requested. John also denied that he breached his fiduciary duties as alleged. EFELDF, Martin, and Bruce Schlafly filed substantially similar answers to count XX.

7

¶ 17                    Cori's Motion for Summary Judgment on Count XX

¶ 18    On January 10, 2020, Cori filed a motion for summary judgment on count XX of the fifth amended complaint. In her motion, Cori claimed that there was no genuine issue of material fact that the meeting of the EFELDF Board of Directors on April 8, 2016, was improper. She argued that the EFELDF Bylaws required that a written notice of a special meeting be given at least seven days prior to the meeting and that it be delivered personally or sent by mail or fax. Cori noted that EFELDF and the other defendants had taken the position that the meeting of April 8, 2016, was "an informal conversation." She argued that the defendants' position was "contrived and belied by the undisputed facts in the case." Cori asserted that EFELDF's corporate counsel reviewed the matter and transmitted a memorandum to Martin, John, and other individuals, recommending that EFELDF notify all directors that the telephonic meeting held April 8, 2016, was invalid and that any actions taken at the meeting were null and void. Cori further asserted that no such action was taken. Cori sought a judgment declaring that "the purported meeting" of the EFELDF Board of Directors on April 8, 2016, was "improperly called, unlawfully conducted, and *ultra vires*." Cori also sought judicial declarations that the actions taken at the meeting on April 8, 2016, were "unlawful, invalid and passed in direct contravention" of the EFELDF Bylaws, the EFELDF Articles of Incorporation, and Illinois law, and that Cori remained a director of EFELDF.

¶ 19    Cori attached several documents in support of her summary judgment motion, including a copy of the EFELDF Bylaws, a copy of the memorandum prepared by EFELDF's corporate counsel, and a copy of Martin's email. The email, dated April 7, 2016, was from Martin to the EFELDF Board of Directors, with a subject line, "Emergency Board Meeting 10 am CST Friday." The email indicated that a "special meeting" of the EFELDF Directors would be held on April 8, 2016. Cori also attached excerpts from the discovery deposition of EFELDF's corporate

representative. Therein, the corporate representative testified that EFELDF had taken the position that it did not consider "the April 8th telephone call to be a valid meeting," and that it was "just an informal conference."

¶ 20    On January 23, 2020, EFELDF filed a response in opposition to Cori's motion for summary judgment. EFELDF asserted that it had never taken the position that Cori had been removed from the board of directors during an informal telephone conversation on April 8, 2016. EFELDF argued that Cori had been removed from the board during the annual meeting of the board of directors on September 18, 2016, and that a declaration that "the April conversation was not a valid meeting" would have no bearing on Cori's removal. EFELDF concluded that Cori failed to establish that she was entitled to judicial declarations that all actions taken by EFELDF after the informal conversation on April 8, 2016, were invalid and that Cori should be reinstated to the board of directors. EFELDF asked that Cori's motion for summary judgment and her requests for declaratory relief be denied. EFELDF attached an affidavit provided by John in support of its response. In the affidavit, John averred:

> "3. On April 8, 2016, certain members of the Board of EFELDF, myself included, engaged in informal conversation amongst themselves.
>
> 4. EFELDF understood that the April 8, 2016, informal conversation did not constitute a meeting of the Board of the Directors of EFELDF, and thus EFELDF has taken no subsequent actions following and relying upon the April 8, 2016, conversation.
>
> 5. On September 18, 2016, after mailing the required notice pursuant to EFELDF's Bylaws, EFELDG held its 2016 annual meeting ***."

John further averred that both he and Cori personally attended the annual meeting. At the meeting, Cori and another director were removed from the EFELDF Board of Directors, effective immediately.

9

¶ 21    Martin, John, and Bruce Schlafly joined in EFELDF's response to Cori's motion for summary judgment. They asked the court to deny Cori's summary judgment motion and her requests for declaratory relief.

¶ 22    On January 27, 2020, Cori filed a reply with supporting documents. Cori argued that the defendants were attempting to convince the court that the April 8, 2016, meeting was an "informal conversation," not an official board meeting. Cori attached an audio recording of the meeting on April 8, 2016, along with a transcript of key portions of the meeting. Cori directed the court's attention to specific portions of the audio along with time references in which: (a) Phyllis Schlafly welcomed everyone "to our first time ever telephone board meeting," and then turned the meeting over to Ed Martin because the bylaws required that the President "preside for all board meetings"; (b) Martin confirmed that "in order to get good minutes, we are recording this," and then took a roll call of the attendees; (c) a lengthy discussion about whether the April 8 meeting was an official meeting of the EFELDF Board of Directors occurred, and then votes were taken on a motion to waive notice and affirm that the April 8 meeting was an official meeting with a quorum; (d) John Schlafly voted "aye" on a motion to waive notice and affirm that the April 8 meeting was an official meeting with a quorum; (e) Martin proposed an agenda for the meeting; and (f) votes were taken on various motions including a motion to elect a successor to Cori on the EFELDF Board of Directors, and motions to replace Cori as the treasurer and vice chairman of EFELDF. Cori claimed that the supporting documents raised serious questions about the credibility of the "evidence" submitted by EFELDF, including John's supporting affidavit.

¶ 23    On February 10, 2020, the circuit court granted Cori's motion for summary judgment on count XX of the fifth amended complaint. The court declared that the EFELDF meeting on April 8, 2016, was "deemed to have been conducted in violation of the then-existing Bylaws of

10

EFELDF," that any actions taken at the meeting on April 8, 2016, were deemed invalid actions, and that Cori remained a director of EFELDF "at least until September 18, 2016."

¶ 24    On February 20, 2020, Cori filed a motion to hold John and EFELDF in statutory contempt pursuant to section 2-1005(f) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(f) (West 2018)). Cori alleged that John's affidavit, filed in support of EFELDF's opposition to her motion for summary judgment, contained false and misleading statements regarding the nature of the EFELDF meeting on April 8, 2016. She claimed that the affidavit was filed in bad faith and for purposes of delay. Cori asked the court to order John and EFELDF to pay the reasonable expenses, including attorney fees, that Cori incurred in responding to the false affidavit and pursuing the contempt motion.

¶ 25    On June 1, 2020, John filed a motion in opposition to Cori's contempt motion. John argued that the undisputed facts showed there was no valid board meeting on April 8, 2016. John claimed that he had responded honestly in his affidavit and that he simply explained that EFELDF "recognized that the call did not represent a valid board meeting and, necessarily, was nothing more than an informal telephone conference." John claimed his position was consistent with Cori's position and that his affidavit did not impair or obstruct Cori's argument she was not effectively removed from the board at the meeting on April 8, 2016.

¶ 26                      The Statutory Contempt Order

¶ 27    From August 3, 2020, through August 10, 2020, the circuit court conducted evidentiary hearings on all pending show cause and contempt motions. After reviewing six days of sworn testimony, more than 600 pages of deposition testimony, and more than 2,000 pages of exhibits, the circuit court entered a 28-page order (contempt order) on September 21, 2020, containing its findings, rulings, and reasoning.

11

¶ 28    In addressing Cori's statutory contempt motion, the circuit court indicated that it had examined the pleadings and attachments including the Martin email, John's affidavit, and the recording and transcript of the April 8, 2016, meeting. The court concluded that John's depiction of the meeting as an informal conversation was "at odds" with the transcript. The court noted that Phyllis Schlafly had thanked the EFELDF Directors for "coming to our first time ever telephone board meeting," that roll call was taken, that Cori's objections were "noted" by Martin, and that motions were made and voted upon, including a motion to replace Cori as the treasurer of EFELDF. The court found that the activities of the EFELDF Board of Directors on April 8, 2016, were nothing like those typically witnessed during "informal conversations." Instead, the activities were what "one would naturally expect to observe at official meetings of members of the board of directors of most any organization." Additionally, the court noted that John was present and voted at the meeting. The court further noted that John was a well-educated and experienced attorney who was "not unaccustomed" to ligation and who was presumably aware of the purpose of countervailing affidavits in summary judgment practice. The court found that the affidavit offered by John in opposition to Cori's motion for summary judgment was not "simply bad judgment or negligence," but rather implied "the conscious doing of a wrong because of a dishonest purpose." The court also found that "the only purpose that could have been served by misrepresenting the nature of the meeting so dramatically was to thwart and obstruct the motion itself." The court concluded that John's affidavit "was made for the purpose of delay and was, in fact, made in bad faith." The court judged John in civil contempt as authorized by section 2-1005(f) of the Code (735 ILCS 5/2-1005(f) (West 2018)) and found that Cori was entitled to recover her reasonable

12

expenses, including attorney fees, that Cori incurred in countering the false affidavit and in filing and prosecuting her motion for statutory contempt.[2]

¶ 29    On October 2, 2020, Cori filed her petition for attorney fees, along with a supporting affidavit and attachment prepared by Cori's attorney. Cori's counsel itemized his hours and expenses in countering John's affidavit and in prosecuting Cori's motion for contempt. Cori's counsel averred that the hourly fees were reasonable and commensurate with fees charged by other firms and attorneys in the Bi-State region, including Madison County, Illinois. Cori requested the sum of $35,252 for attorney fees.

¶ 30    On December 2, 2020, John filed his response to Cori's motion for attorney fees. John reasserted many of the arguments that he made in his response in opposition to Cori's motion for statutory contempt, including his argument that he did not act in bad faith in characterizing the April 8, 2016, meeting of the EFELDF Board of Directions as an informal conversation. He also argued that he had not opposed the declaratory relief requested in count XX. Referring to the fee petition, John argued that Cori sought an award of fees that could not be "fairly or accurately attributed to her one successful contempt motion," and that her claim for fees should be reduced by more than one half. John noted that Cori's counsel provided an "adjusted" number that was purported to reflect only the attorney's time in prosecuting the statutory contempt motion. John argued that the adjustment did not accurately reflect "a true and correct allocation of efforts" and that, as result, Cori's claim for attorney fees substantially exceeded a reasonable sum for prevailing on her "very limited" contempt motion. John claimed that Cori should be awarded no more than $14,848.80 for attorney fees and expenses.

---

[2]Judge Dugan was confirmed as a federal judge of the United States District Court for the Southern District of Illinois on September 23, 2020, and he recused himself from this case on October 1, 2020. Judge Sarah Smith was assigned to take over the case on October 7, 2020.

¶ 31    On March 30, 2021, the circuit court heard arguments on Cori's motion for attorney fees and expenses. On April 17, 2024, the court entered an order containing its findings and decision.[3] The court initially noted that it had "broad discretionary powers" in addressing a request for attorney fees, including discretion to consider the contents of the entire court file, to determine whether an attorney was entitled to fees and whether the requested fees were reasonable. The court reviewed the pleadings, the transcript of the contempt proceedings, and the pleadings and evidence related to Cori's statutory contempt motion. The court also reviewed the detailed billing invoices, the affidavit and supporting documentation for the fee claim "entry by entry." The court considered the skill and standing of the attorneys involved, the nature of the case, the novelty and difficulty of the issues involved, and the reasonable and customary charges for comparable services. After considering the applicable factors, the court ordered John to pay $28,500 to Cori for attorney fees and expenses.

¶ 32                                                II. ANALYSIS

¶ 33    On appeal, John challenges the circuit court's order finding that he filed an affidavit in bad faith or solely for purposes of delay under section 2-1005(f) of the Code (735 ILCS 5/2-1005(f) (West 2018)). John argues that the affidavit he filed in response to Cori's motion for partial summary judgment was not untruthful, and thus not in bad faith. He also argues that his affidavit did not and was not intended to impair Cori's effort to invalidate the EFELDF board meeting on April 8, 2016, and therefore, the affidavit could not have been submitted for purposes of delay. John also argues that the award of attorney fees was erroneous because his affidavit was consistent

_____

[3]In the order, the circuit court frankly stated that it intentionally held the matter under advisement until a resolution of all other matters to keep the parties from "over litigating" the remaining issues.

14

with Cori's position that the meeting was improper and therefore did not cause Cori to incur attorney fees.

¶ 34    Initially, we find that we have jurisdiction to consider this appeal under Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016). Rule 304(b)(5) provides that when an order finding a person or entity in contempt of court imposes a monetary or other penalty, the order is appealable without the express written finding required for appeals under Rule 304(a). Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016).

¶ 35    The standard of review is generally determined by the question raised on appeal. *People v. Morgan*, 2025 IL 130626, ¶ 18; *Redmond v. Socha*, 216 Ill. 2d 622, 633 (2005). Our supreme court has indicated that the trial court's determination that a party is guilty of contempt is a question of fact for the trial court, and a reviewing court will not disturb that finding "unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion." *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984). Thus, in reviewing an order of contempt, the reviewing court will not disturb the trial court's factual findings unless those findings are against the manifest weight of the evidence. *Shamrock Chicago Corp. v. Wroblewski*, 2019 IL App (1st) 182354, ¶ 29. A factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *Wroblewski*, 2019 IL App (1st) 182354, ¶ 30. If the trial court's factual findings are not in dispute or if those findings are supported by the evidence, then the court's contempt determination is reviewed for an abuse of discretion. *Wroblewski*, 2019 IL App (1st) 182354, ¶ 29. A court abuses its discretion when its ruling is arbitrary, unreasonable, or fanciful, or where no reasonable person would take the view adopted by the trial court. *Wroblewski*, 2019 IL App (1st) 182354, ¶ 30.

15

¶ 36    Here, the circuit court found that John presented an affidavit in bad faith and for purposes of delay, and judged John in contempt under section 2-1005(f) of the Code (735 ILCS 5/2-1005(f) (West 2018)). The court further found that Cori was entitled to recover reasonable attorney fees and expenses associated "with countering the false affidavit" and filing and prosecuting her motion for contempt.

¶ 37    Section 2-1005(f) of the Code provides as follows:

> "(f) Affidavits made in bad faith. If it appears to the satisfaction of the court at any time that any affidavit presented pursuant to this Section is presented in bad faith or solely for the purpose of delay, the court shall without delay order the party employing it to pay to the other party the amount of the reasonable expenses which the filing of the affidavit caused him or her to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt." 735 ILCS 5/2-1005(f) (West 2020).

¶ 38    Section 2-1005(f) allows for recovery of attorney fees and expenses incurred in countering an affidavit made in bad faith or for purposes of delay. 735 ILCS 5/2-1005(f) (West 2020). Being penal in nature, this provision is strictly construed. *Medical Modalities Associates, Inc. v. Quick*, 65 Ill. App. 3d 300, 304 (1978). The party seeking an award of attorney fees has the burden to establish that the affidavit was made in bad faith or for purposes of delay. See generally *Kellerman v. Mar-Rue Realty & Builders, Inc.*, 132 Ill. App. 3d 300, 308-09 (1985).

¶ 39    In this case, the circuit court held an evidentiary hearing on Cori's motion for statutory contempt and conducted an examination of the pleadings and supporting documents, including the transcript of the meeting on April 8, 2016, and John's affidavit. The court found that John's affidavit, characterizing the meeting as an "informal conversation," was at odds with the transcript. The evidence shows that Martin emailed a notice to the EFELDF Board of Directors on April 7,

16

2016, with a subject line, "Emergency Board Meeting 10 a.m. CST Friday," calling a special meeting of the board. Martin emailed this notice about 20 hours before the meeting was scheduled to take place. The transcript from that meeting showed that the meeting was "the first ever telephone board meeting," that roll call was taken, that Cori's objection was "noted," and that substantive motions were made and voted upon. The court recognized that John was well-educated and a licensed attorney who was accustomed to litigation and presumably aware of the purpose of countervailing affidavits in summary judgment practice. The court found that the affidavit offered by John did not amount to mere "bad judgment or negligence," but instead implied "conscious" wrongdoing for a "dishonest" purpose, and that the only purpose served by so dramatically misrepresenting the nature of the meeting was to obstruct the motion for summary judgment. The court concluded that John's affidavit was made in bad faith and for purposes of delay. After thoroughly reviewing the record, we find that the court's factual findings were supported by the record and were not against the manifest weight of the evidence. We further find that the court did not abuse its discretion in judging John in contempt under section 2-1005(f) of the Code.

¶ 40 Next, John contends the award of attorney fees was erroneous because his affidavit did not cause Cori to incur attorney fees. John claims that his affidavit bolstered Cori's claim for declaratory relief in count XX, and therefore, Cori was not required to counter the affidavit. Notably, John has not argued that the specific amount of attorney fees was unreasonable, but rather that any award of fees was against the manifest weight of the evidence and an abuse of discretion. John also argues that he should not be found in contempt under section 2-1005(f) because he did not actually file the affidavit.

¶ 41 In this case, Cori filed a motion for summary judgment as to count XX of the fifth amended complaint. Cori sought a judgment declaring that the special meeting on April 8, 2016, was

17

unlawful, invalid, and *ultra vires*, and that any actions taken at the meeting were unlawful, invalid, and in direct contravention of the EFELDF Bylaws. The record shows that John not only joined in EFELDF's response in opposition to Cori's motion for summary judgment and her request for declaratory relief, but he provided an affidavit in support of the response. Therefore, John's attempt to distance himself from his affidavit is without merit. In his affidavit, John characterized the meeting on April 8, 2016, as an "informal conversation," rather than a meeting of the board. As a result, Cori filed a reply, along with additional supporting documents, to challenge the veracity of the statements in John's affidavit, to demonstrate the existence of an actual controversy regarding the nature of the meeting on April 8, 2016, and to argue in support of her request for declaratory relief. Cori defended her position during a hearing on the summary judgment motion. In addition, Cori filed her contempt motion and argued in support of the motion. Judge Dugan had handled the case from the beginning, and he specifically found that John offered an affidavit in bad faith and to thwart and obstruct Cori's motion for summary judgment, and that Cori was entitled to an award of reasonable attorney fees "associated with countering the false affidavit and the necessity of filing and prosecuting" her contempt motion. These findings are supported by the record. Judge Smith, who was Judge Dugan's successor, thoroughly reviewed the transcript of the proceedings from the contempt proceedings and the pleadings related to those proceedings. Judge Smith also thoroughly reviewed Cori's fee petition and the affidavit and supporting documentation filed by Cori's counsel. Judge Smith did not accept the fee petition at face value. She reviewed each invoice, entry by entry. After considering all relevant factors, including the skill of the attorneys, the nature and complexity of the case, and the reasonable and customary fees for the legal services provided, Judge Smith found that Cori incurred $28,500 in countering John's affidavit and prosecuting her contempt petition. After reviewing the record, we cannot say that the circuit court

18

abused its discretion in finding that Cori was caused to incur attorney fees to counter the false affidavit and to prosecute her statutory contempt petition. Accordingly, the judgment in favor of Cori and against John in the amount of $28,500 is hereby affirmed.

¶ 42   Affirmed.